**In re AIR CRASH DISASTER AT SIOUX CITY, IOWA, ON JULY 19, 1989.**

**No. MDL–817.**

United States District Court,
N.D. Illinois, E.D.

March 14, 1990.

See also 128 F.R.D. 131.

Philip H. Corboy, Francis Patrick Murphy, Corboy & Demetrio, Lead Counsel, Kevin M. Forde, Kevin M. Forde, Ltd., Liaison Counsel, Chicago, Ill., for plaintiffs.

John W. Adler, Fred C. Begy, III, Adler, Kaplan & Begy, Chicago, Ill., for United Airlines, Inc.

Norman J. Barry, Daniel Cummings, Alan S. Madans, Rothschild, Barry & Myers, Chicago, Ill., John J. Hennelly, Jr., Steven L. Hogan, Bonita L. Churney, Bryan, Cave, McPheeters & McRoberts, Los Angeles, Cal., for McDonnell Douglas Corp.

H. Blair White, Charles W. Douglas, Sara J. Gourley, Sidley & Austin, Chicago, Ill., for Gen. Elec. Co.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

In this consolidated multidistrict litigation arising from an air crash at Sioux City, Iowa, defendants United Airlines, Inc., McDonnell Douglas Corporation and General Electric Company (collectively "defendants") move the court to dismiss all punitive damages claims under Fed.R.Civ.P. 12(b)(6).[1] In the alternative, defendants request an order determining the state law governing punitive damages in each of the eighteen cases before this court.

## I. Background

On July 19, 1989, United Airlines Flight 232 from Denver to Chicago crashed during an attempted emergency landing at Sioux City, Iowa, after the aircraft lost hydraulic power. Of the 296 people on board, 112 were killed in the tragic crash. The aircraft, owned and operated by United Airlines, was a DC–10 manufactured by McDonnell Douglas. General Electric manufactured the CF6–6 engines utilized on the aircraft.

Flight 232 passengers were from thirty states and two foreign countries. Ninety-three passengers were from Colorado. Eighteen cases were transferred to the Northern District of Illinois for pretrial purposes by order of the Judicial Panel on Multidistrict Litigation. The cases were transferred from district courts located in ten states.

---

1. McDonnell Douglas's motion is styled a motion *in limine.* For practical purposes, McDonnell Douglas seeks to dismiss punitive damages claims. Consequently, its motion is treated as a Rule 12(b)(6) motion to dismiss.

United Airlines is a Delaware corporation with its principal place of business in Illinois. United maintained the aircraft in California. United's flight crew training center is located in Colorado. The aircraft's builder, McDonnell Douglas, is a Maryland corporation with its principal place of business in Missouri. McDonnell Douglas designed and manufactured the aircraft in California. The third defendant, General Electric, is a New York corporation with its principal place of business in New York. General Electric designed and manufactured the engines on Flight 232 in Ohio.

Defendants argue that plaintiffs may not bring claims for punitive damages in this action. They maintain that punitive damage claims should be dismissed because they violate the due process clause of the Fourteenth Amendment. In addition, defendants argue that the Federal Aviation Act preempts punitive damage claims in air crash incidents. In the alternative, defendants request the court to determine the state law governing punitive damages as to each claim.

II. Due Process Limitations On Punitive Damages

Defendants argue that the due process clause of the Fourteenth Amendment categorically bars state law actions for punitive damages in this case. Defendants assert that in some states, a jury is afforded unbridled discretion in visiting this form of punishment upon defendants. In addition, defendants contend that multiple punitive damage awards for the same course of conduct are inherently unfair.

■ The due process clause does not bar punitive damages *per se*. Twice in the last two years, the Supreme Court has declined opportunities to hold that punitive damage awards violate due process. *Browning–*

*Ferris Indus. of Vermont v. Kelco Disposal, Inc.*, —— U.S. ——, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989); *Bankers Life & Casualty v. Crenshaw*, 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988). · Concurring opinions in these decisions suggest that five individual members of the Court would hold that due process constrains imposition of punitive damages in some circumstances.[2] Defendants imply that a Supreme Court decision barring punitive damages on due process grounds is imminent. However, in November 1989, the Court denied *certiorari* in two appeals raising due process objections to punitive damage awards. *Ainsworth v. Combined Insur. Co. of Am.*, 763 P.2d 673 (Nev.1988), *cert. denied* —— U.S. ——, 110 S.Ct. 376, 107 L.Ed.2d 361 (1989); *Clardy v. Sanders*, 551 So.2d 1057 (Ala.1989), *cert. denied* —— U.S. ——, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989). On February 20, 1990, the Court denied *certiorari* in another case raising the due process issue. *HealthAmerica v. Menton*, 551 So.2d 235 (Ala.1989), *cert. denied* —— U.S. ——, 110 S.Ct. 1166, 107 L.Ed.2d 1069 (1990). A categorical bar of claims for punitive damages is simply not supported by the case law. *Eichenseer v. Reserve Life Insur. Co.*, 881 F.2d 1355, 1365 (5th Cir.1989).

■ Defendants argue that the circumstances of this case preclude fair application of punitive damages. Defendants contend that their exposure to multiple claims precludes punitive damages in this case. In one recent mass tort action, a district court expressly disavowed the defendants' argument. *Leonen v. Johns–Manville Corp.*, 717 F.Supp. 272, 286 (D.N.J.1989) (permitting punitive damages in asbestos litigation in spite of defendant's multiple exposure to liability). *See also, Ah You Man, Harry N. Sato v. Raymark Indus.*, 728 F.Supp. 1461 (D.Hawaii 1989) (Supreme

---

**2.** In *Browning–Ferris Indus., Inc. v. Kelco Disposal, Inc.*, —— U.S. ——, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989), the Court declined to address due process constraints on punitive damages because the issue was not preserved on appeal. Justice Brennan, joined by Justice Marshall in a concurring opinion, stated that lack of clear guidelines in punitive damage actions may violate due process. *Id.* 109 S.Ct. at 2923. Jus-

tice O'Connor, joined by Justice Stevens, criticized unbridled discretion afforded to jurors under punitive damages provisions. *Id.* at 2324. In another concurring opinion by Justice O'Connor in *Bankers Life & Casualty Co. v. Crenshaw*, 486 U.S. 71, 86–89, 108 S.Ct. 1645, 1654–1656, 100 L.Ed.2d 62 (1988), Justice Scalia joined in criticizing unbridled discretion afforded jurors regarding punitive damages.

Court has not given any indication that punitive damages are unconstitutional as a matter of law in the mass tort context). Accordingly, defendants' motions to dismiss punitive damages claims on due process grounds are denied.

### III. Preemption Of Punitive Damages By The Federal Aviation Act

■ Defendants argue that the Federal Aviation Act, 49 U.S.C. App. §§ 1304–1551, preempts state law actions for punitive damages. However, the Supreme Court decision in *Silkwood v. Kerr McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984) and the recent seventh circuit decision in *Bieneman v. City of Chicago*, 864 F.2d 463 (7th Cir.1988), *cert. denied* — U.S. ——, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989) conclusively establish that punitive damages are not preempted by the FAA. In *Silkwood*, the Court held that an award of compensatory or punitive damages under state law was not preempted by comprehensive federal regulation of the nuclear power industry. In *Bieneman*, the seventh circuit decided the FAA did not preempt common law damages and penalties in the aviation field.[3]

In section 1106 of the FAA, Congress expressly determined not to preempt certain state remedies:

Nothing contained in this Act shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

FAA, 49 U.S.C.App. § 1506. In reliance upon section 1106, the seventh circuit concluded in *Bieneman* that the FAA did not preempt state tort law claims:

"*Silkwood* ... highlights the extreme reluctance of the modern Court to find preemption." Ronald D. Rotunda, *Sheathing the Sword of Federal Preemption*, 5 Constitutional Commentary 311, 317 (1988). If no preemption is the conclusion notwithstanding the absence from nuclear safety legislation of a stat-

ute such as § 1106, it must be the appropriate treatment of air travel as well. 864 F.2d at 472. Defendants concede that compensatory damages are not preempted by the FAA. *See, Air Crash Disaster at JFK Int'l Airport*, 635 F.2d 67, 74 (2d Cir.1980). Defendants assert that section 1106 excludes punitive damages because punitive damages are not a traditional remedy existing at common law.

*Bieneman* and *Silkwood* support the proposition that punitive damages are included in section 1106. In *Bieneman*, the seventh circuit noted that punitive and compensatory damages are methods of regulating safety. 864 F.2d at 472. The court did not distinguish punitive and compensatory damages when interpreting section 1106. In *Silkwood*, the Supreme Court expressly rejected defendants' proposed distinction regarding nuclear safety regulation:

Kerr–McGee [the defendant] focuses on the differences between compensatory and punitive damages awards and asserts that, at most, Congress intended to allow the former. This argument, however is misdirected because our inquiry is not whether Congress expressly allowed punitive damages awards. *Punitive damages have long been a part of traditional state tort law.* As we noted above, Congress assumed that traditional principles of state tort law would apply with full force unless they were expressly supplanted. Thus, it is Kerr–McGee's burden to show that Congress intended to preclude such awards.

464 U.S. at 255, 104 S.Ct. at 625 (emphasis added). Together, *Silkwood* and *Bieneman* establish a presumption against preemption by the FAA. Defendants offer no evidence that Congress sought to segregate punitive damages from other traditional "remedies ... existing at common law" under section 1106. Accordingly, defendants' motions to dismiss punitive damages claims based on preemption by the FAA are denied.

---

**3.** McDonnell Douglas briefed the issue whether punitive damages were preempted by the FAA without addressing or citing *Bieneman*.

## IV. Determination Of State Law Applicable In Each Case

■ Alternatively, defendants request the court to determine the law applicable to punitive damages in each case.[4] A federal court ordinarily must apply the choice of law principles of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). When a case is transferred, the transferee court must apply the choice of law rules of the state where the transferor court sits. *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Air Crash Disaster Near Chicago*, 644 F.2d 594, 610 (7th Cir.), *cert. denied sub nom, Lin v. Am. Airlines*, 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981) ("Air Crash"). In this litigation, at least twelve cases originating in eight different states assert claims for punitive damages.[5]

In *Air Crash*, the seventh circuit resolved the choice of law issues in consolidated multidistrict litigation regarding an air crash in Illinois. The court expressly adopted the concept of depecage, "the process of applying rules of different states on the basis of the precise issue involved." *Id.* at 611. Accordingly, this opinion resolves the choice of law question regarding only the issue of punitive damages.

■ Plaintiffs have not complied with this court's order regarding briefing the choice of law issues relating to punitive damages, nor have they responded to defendants' briefs on the issue. Plaintiffs simply respond that the issue has been raised prematurely. This court does not agree.

The choice of law question regarding punitive damages should be resolved as early as possible. First and foremost, this determination may facilitate settlement negotiations and thus enable victims of the crash to be compensated expeditiously. Defendants have offered not to contest liability for compensatory damages as to any claimant who waives claims for punitive damages. Defendants offer to pay compensatory damages within thirty days after the amount is determined. The applicable state law may not permit punitive damages in every case. Most states do not permit punitive damages in wrongful death actions. *See, id.* at 607. States differ over whether to permit punitive damages in survival actions.[6] Finally, although all relevant states permit punitive damages in personal injury actions, the applicable standards differ from state to state.[7] Conse-

---

4. The court previously requested that choice of law considerations relating to punitive damages be briefed. *See* orders of November 27, 1989 and January 16, 1990.

5. Cases asserting punitive damage claims include: *Folkvord* No. 90 C 0296, *McKelvey* No. 89 C 9172, *Musick* No. 89 C 8465, (California); *Gillespie* No. 90 C 0079, (Colorado); *Gomez* No. 89 C 8466, (District of Columbia); *Vaziri* No. 90 C 0535, (Georgia) (a case is pending in Georgia to determine who may properly bring this claim); *Biggs* No. 89 C 8482, *Cameron* No. 89 C 9295 (Iowa); *Walmsley* No. 89 C 6471 (Illinois); *Halizak* No. 90 C 0334 (New York); and *Mackin* No. 89 C 8408, *Bealer* No. 89 C 8773, (Pennsylvania).

6. For example, Illinois law does not permit punitive damages in wrongful death or survival actions. *Poole v. Alpha Therapeutic Corp.*, 698 F.Supp. 1367, 1372 (N.D.Ill.1988). California does not permit punitive damages in wrongful death actions. *Air Crash*, 644 F.2d at 607. However, California does permit punitive damages in survival actions. Cal.Civ.Code § 3294 (West 1990).

7. For example, California, Colorado and Illinois all apply different standards to the award of

punitive damages. California requires a plaintiff to provide clear and convincing evidence of oppression, fraud, or malice in order to recover punitive damages. Under California law, "malice" is defined as conduct intended to cause injury to the plaintiff or despicable conduct carried on with a willful and conscious disregard of the rights and safety of others, and "oppression" means despicable conduct done in conscious disregard of the victim's rights. *Id.* Colorado requires that conduct supporting punitive damages be proven "beyond a reasonable doubt." Colo.Rev.Stat. § 13–25–127 (1987). In addition, Colorado limits punitive damages awards for personal injury to the amount of actual damages unless the court determines that the defendant has continued the behavior in a willful and wanton manner. Colo.Rev.Stat. § 13–21–102 (1987). Finally, in Illinois, punitive damages are awarded in personal injury actions "when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 565, 384 N.E.2d 353, 359 (1978).

quently, the settlement value of an individual claim is difficult to measure without first determining whether punitive damages are available and, where available, the standard for recovery. Once the choice of law question is resolved, some plaintiffs may choose to forego lengthy and expensive discovery and accept defendants' offer not to contest liability.

Plaintiffs complain that resolving punitive damages requires choice of law analysis involving many different states. Plaintiffs argue that individual plaintiffs should be permitted to litigate the choice of law question after the cases are returned to the courts where they were filed. The patent inefficiency of plaintiffs' proposal dictates that the punitive damages choice of law question be resolved by this court rather than by a significant number of other federal courts. Moreover, a plaintiff's domicile plays no role in determining which state law governs punitive damages. *Air Crash*, 644 F.2d at 612–613. The choice of law question depends entirely on activities conducted by defendants. These activities are common to all the consolidated cases. Consequently, plaintiffs need not litigate this choice of law issue individually. Resolving the punitive damages choice of law issue in this consolidated litigation also insures consistent and efficient rulings.

Plaintiffs also declined to respond to the choice of law issue because no discovery has been conducted on the issue of liability[8] and "there exists no basis for a reasoned decision as to which state's law should be applied to each of these cases." Plaintiffs' response at 3, 25. Plaintiffs' purported need for discovery on this issue is stated in general and conclusory terms. Their complaints contain allegations as to the situs of defendants' respective principal places of business. Plaintiffs have not suggested that any material issue of fact exists concerning where defendants' corporate nerve centers are located or where defendants' alleged wrongful conduct occurred. Indeed, plaintiffs have identified defendants' personnel whose depositions

are essential on the liability issue. *See* plaintiffs' response, exhibit 2. Those deponents are located in precisely the same states defendants assert are the locations where the conduct at issued occurred: Colorado (United Airlines), Ohio (General Electric), and California (McDonnell Douglas).

Plaintiffs do not argue there is any good faith dispute as to any factual consideration relevant to a choice of law analysis. Yet plaintiffs suggest that defendants' motions to dismiss punitive damage claims must be treated as motions for summary judgment because "defendants have referred to factual matters outside the pleadings ... without supporting affidavits." Plaintiffs' response at 25. A similar argument was asserted by plaintiffs in *Air Crash* and rejected by the seventh circuit. 644 F.2d at 619. *See also In re Air Crash Disaster at Stapleton Intern.*, 720 F.Supp. 1455, 1463 (D.Colo.1988) (factual disputes do not foreclose determination of choice of law analysis regarding punitive damages). In the interest of fundamental fairness, however, plaintiffs shall be given a reasonable opportunity to demonstrate a particularized need for expedited discovery on any specific factual predicate for this court's choice of law analysis; plaintiffs may move for reconsideration accordingly.

## A. Cases Transferred From California

■ Three cases were filed in federal courts located in California.[9] California employs a "comparative impairment" analysis. Under this analysis, when a true conflict exists, a court should apply the law of the state whose interests would be more impaired if its law were not applied. *Bernhard v. Harrah's Club*, 16 Cal.3d 313, 320, 128 Cal.Rptr. 215, 219, 546 P.2d 719, 723 (1976).

Initially, the court must determine which states' interests to consider. In *Air Crash*, the court applied California's comparative impairment test. *Air Crash*, 644 F.2d at 621–628. The court restricted the analysis

---

**8.** Discovery on the issue of compensatory damages is scheduled for completion by March 15, 1990, as to all cases originally transferred to this court. Order of January 16, 1990.

**9.** *Folkvord,* No. 90 C 0296; *McKelvey,* No. 89 C 9172; and *Musick,* No. 89 C 8465.

to three states representing the principal place of business, the place of the alleged misconduct and the state in which the injury occurred.[10] The court noted that the domiciliary states of the plaintiffs or their representatives are not relevant to the question of punitive damages. *Id.* at 622.

After narrowing the analysis to the relevant states, the court must determine whether an apparent conflict exists between the punitive damages laws of those states. *Id.* at 621, citing *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 148 Cal.Rptr. 867, 870, 583 P.2d 721, 724 (1978). If an apparent conflict exists, the court examines the applicable law to see if a "moderate and restrained interpretation" of the law reveals that only one state has a legitimate interest in the application of its policy. *Air Crash*, 644 F.2d at 621, citing *Bernhard*, 16 Cal.3d at 320, 128 Cal.Rptr. at 219, 546 P.2d at 723. When a restrained or moderate interpretation of state law fails to resolve the conflict, a "true" conflict exists.

True conflicts are resolved by applying the law of the state whose interest would be the more impaired if its law were not applied. *Id.; Clothesrigger, Inc. v. GTE Corp.*, 191 Cal.App.3d 605, 614, 236 Cal. Rptr. 605, 614 (1987). The process is " 'essentially a process of allocating respective spheres of lawmaking influence.' " *Air Crash*, 644 F.2d at 622, quoting *Offshore Rental*, 22 Cal.3d at 165, 148 Cal.Rptr. at 872, 583 P.2d at 726 (citations omitted). The court must consider (1) whether one state's punitive damages provision is more strongly held than that of other interested states, and (2) the "fit" between the purpose of each potentially applicable punitive damages provision and the circumstances of the case. *Air Crash*, 644 F.2d at 622 (citations omitted).

In this case, the injury occurred in Iowa. However, Iowa was not the place of departure or scheduled destination. Under any theory of liability, the fact that the accident occurred in Iowa was a mere fortuity. Consequently, Iowa's interest in the action

does not merit further consideration under California choice of law principles. The analysis is limited to the principal place of business of each defendant and the place of the conduct at issue.

### 1. *United Airlines*

■ Under the comparative impairment test, the punitive damages laws of Illinois, California and Colorado must be considered regarding United Airlines. United has its principal place of business in Illinois. Both California and Colorado may have been the site of United's alleged wrongful conduct. The alleged wrongful conduct could relate to United's maintenance, testing and inspection of the aircraft in California. Punitive damages may be based upon the conduct of United's crew. United's flying personnel are principally trained in Colorado.

The punitive damages laws of these states substantially differ. California does not permit punitive damages in wrongful death actions. *Air Crash*, 644 F.2d at 607 citing *Tarasoff v. Regents of the Univ. of Cal.*, 17 Cal.3d 425, 450, 131 Cal.Rptr. 14, 33, 551 P.2d 334, 353 (1976). California does permit punitive damages in survival actions and personal injury actions. Cal. Civ.Code § 3294. California requires clear and convincing evidence of oppression, fraud, or malice. *Id.* Under California law, "malice" is defined as conduct intended to cause injury to the plaintiff or despicable conduct carried on with a willful and conscious disregard of the rights and safety of others, and "oppression" means despicable conduct done in conscious disregard of the victim's rights. *Id.*

Colorado does not permit punitive damages in wrongful death or survival actions. *Mangus v. Miller*, 35 Colo.App. 335, 535 P.2d 219, *cert. dismissed*, 189 Colo. 481, 569 P.2d 1390 (1975); *Beikmann v. Int'l Playtex, Inc.*, 658 F.Supp. 255, 257 (D.Colo. 1987); *Estate of Burron v. Edwards*, 42 Colo.App. 141, 594 P.2d 1064, 1065 (1979). In other actions, Colorado requires that conduct supporting punitive damages be

---

**10.** The court considered the interests of Illinois, the state in which the injury occurred, because "it is a state in which both the policies of protec-

tion of airline corporations and deterrence of misconduct are peculiarly important." *Air Crash*, 644 F.2d at 622.

proven "beyond a reasonable doubt." Colo.Rev.Stat. § 13–25–127 (1987). In addition, Colorado limits punitive damages awards for personal injury to the amount of actual damages unless the court determines that the defendant has continued the behavior in a willful and wanton manner. Colo.Rev.Stat. § 13–21–102 (1987).

In general, Illinois does not permit punitive damages in wrongful death or survival actions. *Poole v. Alpha Therapeutic Corp.*, 698 F.Supp. 1367, 1372 (N.D.Ill. 1988); *Mattyasovszky v. West Towns Bus Co.*, 61 Ill.2d 31, 330 N.E.2d 509 (1975).[11] Punitive damages are awarded in other actions "when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 565, 384 N.E.2d 353, 359 (1978).

A true conflict exists in the availability of punitive damages under the laws of Colorado, California and Illinois. These laws reflect a balance reached by each state between deterrence of wrongful conduct and protection of defendants from excessive financial liability. *Air Crash*, 644 F.2d at 610. Illinois, Colorado and California all have legitimate interests in controlling the activity of defendant United Airlines. Colorado and California's interests are limited to activity within their states. Illinois has an interest in activity performed in all three states. The appropriate method to resolve the conflict is to determine which state interest would be most impaired by failure to apply its law.

United Airlines argues that Illinois is not as committed to its punitive damages law as Colorado or California because Illinois common law rather than statutory authority defines the right to punitive damages. Common law authority is not necessarily inferior to statutory authority of another state. *See, id.* at 613–614, 625, 626 (finding

that California, Missouri, Illinois and New York all have strong commitments to their respective approaches to punitive damages). The state legislature may have purposefully acquiesced in the judicial resolution of the punitive damages standard. Defendants do not cite a case in which a state was found to lack a commitment to its punitive damages law. Consequently, the choice of law decision will be based upon the "fit" between the purpose of each state's punitive damages law and the circumstances of the case. *id.* at 622 (citations omitted).

In general, plaintiffs raise two separate bases for punitive damages against United. First, plaintiffs contend that United recklessly maintained, tested or inspected the aircraft. United asserts that these alleged reckless acts could only occur in California. United contends that California has a direct deterrent interest in faulty maintenance performed in California and that California law should apply. The second basis for punitive damages is alleged reckless operation of the aircraft. United contends that allegations concerning the flight crew relate to the crew's training in Colorado. United asserts that Colorado law should govern punitive damages claims regarding the activity of the flight crew.

However, United is not engaged in the business of manufacturing planes or training flight crews. Although United may bring its aircraft to California for servicing and train its flight crews in Colorado, United's primary activity is to carry passengers. United's central hub and principal place of business are located in Illinois. Flight 232 was destined for Illinois. United argues that the locale of the wrongful conduct is closely associated with the conduct "because the likelihood of injury from the conduct is generally greater in that place." United Memorandum at 28. However, injury is unlikely to occur at the site of United's training or maintenance. It is

---

11. Neither the Illinois Wrongful Death Act, Ill. Rev.Stat. ch. 70, ¶ 2, nor the Illinois Survival Act, Ill.Rev.Stat. ch. 110½, ¶ 27–6, expressly provides for punitive damages. However, the general rule against punitive damages under the Survival Act has two exceptions. Punitive dam-

ages claims survive death of a plaintiff when there exists a statutory basis for the claim or when strong equitable considerations compel survival. *Raisl v. Elwood Indus.*, 134 Ill.App.3d 170, 89 Ill.Dec. 100, 479 N.E.2d 1106 (Ill.App. 1985).

likely to occur at United's primary place of business, where United flights frequently arrive and depart.[12]

Illinois is an appropriate forum to balance the deterrent function of punitive damages against the need to protect United Airlines from excessive financial liability. Illinois benefits from United's presence and Illinois risks the consequences of United's wrongful conduct. Illinois' interest in its law respecting punitive damages would be impaired more than either Colorado's or California's if its law were not applied. As United's principal place of business, Illinois law regarding punitive damages governs claims against United Airlines.

### 2. McDonnell Douglas

 McDonnell Douglas designed and built the aircraft in California. Its principal place of business is Missouri. In *Air Crash*, McDonnell Douglas was a defendant. Under analogous circumstances, the seventh circuit wrestled with the question whether Missouri or California punitive damages policies would be more impaired if they were not applied. The court concluded that both states' policies would be equally impaired. The court decided that a California court would escape the quandary by applying Illinois law. *Air Crash*, 644 F.2d at 622–626.

Subsequent decisions by California state courts indicate that in the event California shares an equal interest in application of its law with another state, a California court would apply California law. *See, Am. Nat'l Bank of Commerce v. Corondoni*, 169 Cal.App.3d 368, 215 Cal.Rptr. 331 (1985) (California's general preference is to apply its own law). California courts have "repeatedly asserted that California has an important interest in regulating products manufactured in California." *Corrigan v. Bjork Shiley Corp.*, 182 Cal.App.3d 166, 180, 227 Cal.Rptr. 247, *cert. denied sub nom. Shiley Inc. v. Corrigan*, 479 U.S.

1049, 107 S.Ct. 921, 93 L.Ed.2d 973 (1987). Since Missouri and California law would be equally impaired if not applied, California law governs claims for punitive damages against McDonnell Douglas.

### 3. General Electric

 General Electric manufactured the engines on Flight 232 in Ohio. Its principal place of business is New York. As discussed above, Iowa was the fortuitous site of the crash, and Iowa has no real interest in imposing punitive damages against General Electric. Colorado has some interest in having its punitive damages law applied in this case because Denver has a busy airport from which Flight 232 departed. However, Ohio and New York have stronger interests than either Colorado or Iowa. Consequently, the comparative impairment analysis is limited to Ohio and New York.

A brief summary of the punitive damage laws of Ohio and New York reveals that a true conflict exists. Ohio prohibits punitive damage awards in wrongful death actions. *Rubeck v. Huffman*, 54 Ohio St.2d 20, 374 N.E.2d 411, 413 (1978). In order to award punitive damages in other actions, a jury must find clear and convincing evidence that a manufacturer "manifested a flagrant disregard of the safety of persons who might be harmed by the product in question." Ohio Rev.Code § 2307.80(A).

New York permits awards of punitive damages in wrongful death actions, N.Y. Est. Powers & Trusts Law § 5–4.3(b), survival actions, N.Y. Est. Powers & Trusts Law § 11–3.2(b), and ordinary personal injury actions. New York allows imposition of punitive damages for conduct that is "morally culpable, or is actuated by evil and reprehensible motives." *Walker v. Sheldon*, 10 N.Y.2d 401, 404, 179 N.E.2d 497, 498, 223 N.Y.S.2d 488, 490 (1961).

General Electric argues that Ohio has expressed a stronger, more recent interest

---

**12.** The most recent data from the National Transportation Safety Board shows that 30.4% of all airline accidents in 1986 occurred during the taxi, takeoff and climb phase of operation, 43.4% occurred during the descent, approach and landing phase and only 17.4% occurred during the cruise phase. From 1981–1985, 55% of the fatal accidents occurred during the taxi, takeoff and climb phase, 25% occurred during descent, approach and landing, and 10% occurred during the cruise. United's motion, App. B. National Transportation Safety Board, Annual Review of Aircraft Accident Data—U.S. Air Carrier Operations Calendar Year 1986.

in the imposition of its punitive damages law. General Electric points out that Ohio law is codified and offers greater protection to a corporation than New York law. However, the fact that New York's punitive damage provision was not codified may imply that the state legislature agrees with the judicial resolution of the punitive damages standard. The fact that Ohio law affords greater protection to defendants than New York law indicates only that Ohio has struck a different balance between deterrence and protection than New York.

Ohio interests would be more impaired if its punitive damages policy were not applied. General Electric manufactures aircraft engines in Ohio and not in New York. General Electric's principal place of business is in New York because other holdings, including the National Broadcasting Company, Kidder, Peabody Group, Inc. and GE Turbine Operations, are located in New York. Since the alleged wrongful acts occurred in Ohio, and Ohio is the principal place of business of General Electric's aircraft engine manufacturing division, Ohio has a greater opportunity to balance interests of deterrence against protection of General Electric regarding airplane engine manufacturing. Ohio law governs the punitive damage claims against General Electric.

### 4. Conclusion

The three cases originally filed in California each assert claims for punitive damages based upon personal injuries. The punitive damage claims against United Airlines shall be governed by Illinois law. The claims against McDonnell Douglas shall be governed by California law. The claims against General Electric shall be governed by Ohio law.

**B. Cases Transferred From Colorado, Iowa, New York, and Georgia and cases filed in Illinois**

Six cases stating claims for punitive damages were filed in Colorado, Iowa, Illinois, New York and Georgia.[13] Colorado, Iowa, Illinois and New York all apply the "most significant relationship" test described in § 145 *et seq.* of the Restatement (Second) of the Conflict of Laws ("the Restatement").[14] The Supreme Court of Georgia has never decided whether the Restatement should be applied in air crash cases, but Georgia would adopt the Restatement if the question were raised.[15] The seventh circuit delineated the Restatement test in *Air Crash*, 644 F.2d at 611–612:

> The Restatement (Second) provides two sets of criteria for the measurement of the "most significant relationship." The first set of criteria includes general factors such as the needs of the inter-

**13.** These cases are: *Gillespie* No. 90 C 0079 (Colorado); *Biggs* No. 89 C 8482, *Cameron* No. 89 C 9295 (Iowa); *Walmsley,* No. 89 C 6471 (Illinois); *Halizak* No. 90 C 0334 (New York) (claims against United Airlines and McDonnell Douglas only); *Vaziri,* Nos. 90 C 0535 and 90 C 0509 (Georgia) (a case is pending in Georgia to determine who may properly bring this claim).

**14.** Colorado: *In re Air Crash Disaster At Stapleton Int'l,* 720 F.Supp. 1445, 1448, citing *First Nat'l Bank v. Rostek,* 182 Colo. 437, 514 P.2d 314 (1973).

Iowa: *Goetz v. Wells Ford Mercury, Inc.,* 405 N.W.2d 842 (Iowa 1987).

Illinois: *Air Crash,* 644 F.2d at 611, citing *Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593, 596 (1973).

New York: The New York test is the functional equivalent of the Illinois (Restatement) test. *Air Crash,* 644 F.2d at 628–629.

**15.** Georgia's intermediate courts have applied the antiquated *lex loci delecti* rule. *Risdon Enterprises Inc. v. Colemill Enterprises, Inc.,* 172

Ga.App. 902, 324 S.E.2d 738, 740 (1984). However, lower state court decisions are "not binding evidence of what the [state] Supreme Court would do in a similar case." *Green v. J.C. Penney auto Insur. Co.,* 806 F.2d 759, 761 (7th Cir. 1986). Citing the difficulty of applying the *lex loci* rule, in *Baltimore Football Club, Inc. v. Lockheed Corp.,* 525 F.Supp. 1206, 1208–1209 (N.D.Ga.1981) the same Georgia court from which *Vaziri* was transferred relied on the seventh circuit's "most significant relationship" analysis in *Pittway v. Lockheed Aircraft Corp.,* 641 F.2d 524 (7th Cir.1981). The Georgia Supreme Court is not likely to apply the *lex loci* rule in air crash cases. *Cf., Saloomey v. Jeppesen & Co.,* 707 F.2d 671, 674 (2d Cir.1983) (predicting that Connecticut Supreme Court would adopt the modern "most significant relationship" approach in the unique context of "a wrongful death action arising from an aviation accident," notwithstanding that Connecticut previously applied *lex loci*).

state system; relevant policies of the forum and other interested states; protection of justified expectations; the basic policies underlying the particular field of law; certainty, predictability and uniformity of result; and ease in the determination and application of the law to be applied. The second set of criteria includes the contacts to be taken into account in applying these principles. These contacts are: (1) the place of the injury; (2) the place of misconduct; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship between the parties is centered. These contacts are to evaluated according to their relative importance to the issue involved and according to the purposes sought to be achieved by the relevant rules of the interested states. The most significant relationship test must be applied independently to each defendant.

### 1. *United Airlines*

 The first issue is which states to consider. In this action, the states that must be considered are: Iowa, the place of the injury; Colorado and California, the places of the alleged misconduct; Illinois, the principal place of business of United Airlines; Delaware, the place of incorporation of United Airlines.[16] It is difficult to ascertain where the relationship between the parties is "centered." Since the relationship must have been centered in Colorado, California, Iowa or Illinois, the question need not be resolved. The interests of these states will be considered. The states of domicile of the plaintiffs are not relevant to the choice of punitive damage laws. *Air Crash*, 644 F.2d at 612–613.

The interests of each state in application of its punitive damage laws must be considered. The purpose of punitive damages is punishment of the defendant and deterrence of future wrongdoing. These purposes are balanced against the danger of imposing excessive financial liability on the defendant.

As the site of the injury, Iowa has presumptively significant interests in the action. However, the eventual crash in Iowa was fortuitous. Iowa's interest or ability to deter United's conduct depended upon an unforeseen emergency landing in Sioux City. Illinois, Colorado and California each have a substantial connection to United's business activity, and a corresponding interest in balancing deterrence against protection of a defendant like United.

California has an interest in monitoring United's maintenance activity conducted in California. Colorado has an interest in regulating the training of United's flight crews in Colorado. United proposes that California law govern punitive damage claims arising from alleged faulty maintenance and Colorado law govern punitive damage claims arising from training the crew. However, it is unclear that corporate decisions resulting in allegedly wrongful acts by United would necessarily have occurred in either California or Colorado. Colorado and California derive substantial sales and income taxes, as well as other revenues, directly or indirectly from United's activities in their states.

United's principal place of business is Illinois. As discussed earlier, Illinois benefits from United's economic activity within the state, and Illinois suffers a substantial risk that wrongful behavior will result in an accident occurring on flights scheduled to arrive in or depart from Chicago. United may have committed wrongful acts relating to maintenance of the aircraft or training of its flight crew. Allegations concerning United's wrongful conduct may easily be recharacterized as permitting passengers to travel upon a faulty aircraft flown by an ill-trained crew. Illinois has the most significant relationship to United's passenger business. Consequently, Illinois is well placed to achieve a balance between deterrence of wrongful conduct and protection from excessive liability.

United argues that potential defendants would be encouraged to choose their princi-

---

**16.** Delaware's interest in this incident results from the formality of incorporation in Delaware. No activity related to the air crash oc-

curred in Delaware. Consequently, Delaware's interest need not be discussed further.

pal place of business to minimize punitive damage liability. However, defendants are just as likely to manipulate the location of their maintenance or training centers to minimize liability. The application of Illinois law achieves certainty, predictability and ease of application, as well as the purposes of punitive damages. Applying a single standard to the issue of punitive damages with respect to United's activities simplifies the issue. Accordingly, punitive damage claims in the consolidated cases subject to the Restatement are governed by Illinois law. As discussed earlier, Illinois does not permit punitive damage claims in survival actions or wrongful death actions.

### 2. McDonnell Douglas

■ The Restatement analysis regarding McDonnell Douglas is limited to California, site of the alleged wrongful conduct, Missouri, McDonnell Douglas' principal place of business, Maryland, its place of incorporation[17] and Iowa, the site of the injury. For the reasons stated above, Iowa law will not be applied. As between California and Missouri, in *Air Crash* the seventh circuit determined that these states had an equal interest in the application of their punitive damage laws and resolved the conflict by application of Illinois law, the site of the crash. Since no acceptable alternative to California or Missouri law exists in this case, a resolution to the conflict must be reached.

The Restatement § 145, comment c, provides: "if the primary purpose of the tort rule involved is to deter or punish misconduct, ... the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship...." *See, Houston North Hosp. Prop. v. Telco Leasing, Inc.,* 688 F.2d 408, 409, n. 3b (5th Cir.1982). *See also,* Restate-

ment § 145 comment e. At this early stage of the litigation, some doubt exists about the site of allegedly wrongful conduct. Conceivably, wrongful conduct resulting in the accident could have occurred in either state. However, the design and manufacture of the aircraft occurred in California. Since faulty design and manufacture are the basis for the punitive damage claims against McDonnell Douglas, California law appropriately governs these actions. California does not permit punitive damages in wrongful death actions but does permit punitive damages in survival actions.

### 3. General Electric

■ General Electric manufactured and designed the aircraft's engine in Ohio. New York is General Electric's principal place of business. General Electric's aircraft engine business takes place predominantly in Ohio. As discussed above, New York's relationship to General Electric's aircraft engine manufacturing business is objectively less than Ohio's interest. Accordingly, Ohio law governs punitive damage claims against General Electric. Ohio law permits punitive damages in survival actions but not in wrongful death actions.

### C. Cases Transferred From Pennsylvania and the District of Columbia

Two cases asserting punitive damage claims were originally brought in Pennsylvania and the District of Columbia.[18] Pennsylvania and the District of Columbia apply a combination of the governmental interest analysis and the most significant relationship test.[19] In *Hercules,* the District of Columbia Court of Appeals concurred with Judge Joyce Green in *In re Air Crash Disaster,* 559 F.Supp. 333, 342 (D.D. C.1983) that "the state with the 'most sig-

---

**17.** Given the obviously greater interests of the other states, Maryland's interest as the formal place of incorporation need not be discussed.

**18.** Those cases are: *Mackin* No. 89 C 8408 (Pennsylvania); and *Gomez* No. 89 C 8466 (District of Columbia).

**19.** District of Columbia: *Hercules & Co. v. Shama Restaurant Corp.,* 566 A.2d 31, 40 (D.C.App.

1989) (District of Columbia approach is a "constructive blending" of governmental interest analysis and the Restatement approach); *Pearce v. E.F. Hutton Group, Inc.,* 664 F.Supp. 1490, 1496 (D.D.C.1987).

Pennsylvania: *Giovanetti v. Johns–Manville Corp.,* 372 Pa.Super. 431, 539 A.2d 871, 873 (Pa.Super.Ct.1988) (combining government interest analysis and significant relationship approach of the Restatement).

nificant relationship' should also be the state whose policy is advanced by application of [its] law." *Hercules,* 566 A.2d at 41 n. 18. In *Air Crash,* the seventh circuit observed that "the tests to be used, although containing significant differences, mandate an analytical inquiry which is basically the same." *Air Crash,* 644 F.2d at 610. Since California's governmental interest analysis and the Restatement test produced the same result for each defendant, it is unnecessary to repeat the analysis with regard to the combined tests employed by Pennsylvania and the District of Columbia.

The choice of law rules of Pennsylvania and the District of Columbia would result in application of Illinois law to punitive damage claims against United, California law to claims against McDonnell Douglas and Ohio law to claims against General Electric.

V. Conclusions

Defendants' motions to bar punitive damage claims are denied. Plaintiffs' claims for punitive damages against United Airlines are governed by Illinois law. Plaintiffs' claims for punitive damages against McDonnell Douglas are governed by California law. Plaintiffs' punitive damage claims against General Electric are governed by Ohio law.

Plaintiffs may move to take expedited discovery as to any specifically identified disputed fact material to this court's choice of law analysis.